CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 07 2008

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:08CR00005-2 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CHRISTINA DAWN CHEATHAM, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in Count One with knowingly conspiring, combining, confederating, and agreeing with others known and unknown to the grand jury, all in violation of Title 18, United States Code, Section 371, and in Count Three with knowingly conspiring to produce, transfer, possess, and use unlawfully obtained identification documents, all in violation of Title 18, United States Code, Section 1028(f).

On August 5, 2008, a plea hearing was conducted before the undersigned, and pursuant to the terms of the plea agreement, the defendant entered a plea of guilty to Count One of the Indictment. At this hearing the defendant was placed under oath and testified her full legal name is Christina Dawn Cheatham, she was born on March 12, 1984, and she attended high school up to the eleventh grade education. The defendant stated that she can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against her and the consequences of pleading guilty to those charges. The defendant further testified that she was not under the influence of alcohol, medicine, or any drug. The defendant stated that she had no other physical or mental condition which impaired her ability to understand the nature of the proceedings

being held. The defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances, or threats in an effort to induce her plea. The defendant testified that she understood that Count One is a felony, and if her plea is accepted, she will be adjudged guilty of that offense, and the government will move for the dismissal of Count Three of the Indictment.

The defendant was informed that the maximum possible penalty for Count One is a $250,000 fine, five years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was informed that the maximum possible penalty for Count Three is a $250,000 fine, fifteen years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was further informed that parole has been abolished and that if she is sentenced to prison, she will not be released on parole but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that she understood that she will be required to pay a mandatory assessment of $100, per felony count of conviction.[1]

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's

---

[1] The plea agreement provides that the defendant is to pay a mandatory assessment of $100 per felony count of conviction, but indicates that a $200 assessment is due. (Plea Agreement, p. 3 ¶6.) This appears to be a typographical error, as the defendant is pleading guilty to only one felony count. The undersigned was not aware of this typographical error before or during the Rule 11 hearing. However, this error is non-material, as the defendant acknowledged during the hearing that she is responsible for a $100 assessment.

decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the Sentencing Guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged she agreed that USSG §§ 2L2.1 and 2X1.1, with a base offense of 11, are applicable to her criminal conduct, and that if the court does not accept this recommendation, it does not provide her with grounds to withdraw her guilty plea. The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because she meets the listed criteria, she should be granted an additional one-level (1) reduction under USSG § 3E1.1(b), if applicable. The defendant also stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, she must provide such assistance in a manner set forth in the plea agreement. The defendant stated that she understood that a determination as to whether she had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant was informed that if she fulfills her obligations under the plea agreement, the

government had agreed to recommend a sentence of incarceration at the low end of the guidelines range. The defendant was informed that the government would object if she moved for a downward departure.

The defendant acknowledged she knew that despite the court's recommendations for the location of service for any term of imprisonment, it is up to the Bureau of Prisons to determine where she will serve any sentence imposed. The defendant was informed that any information she gives during a proffer or cooperation will not be used against her to enhance her sentence pursuant to USSG § 1B1.8, but that the information could be used to show she was accepting responsibility. The defendant acknowledged that any fines, assessments and restitution would be payable in full immediately upon entry of a judgment of conviction, and she agreed to make good faith efforts toward payment of any restitution obligation imposed. The defendant admitted she knew she would be required to submit a financial statement revealing all her assets and liabilities within thirty days after the date of her plea agreement. After completion of this financial statement, defendant agreed she would not convey anything of value without authorization from the government.

The defendant acknowledged that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless she voluntarily elects to do so in her own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that she understood that under the terms of the agreement she was waiving rights to appeal or collaterally attack her conviction or sentence.[2] The defendant stated she was aware that the government had retained its right to appeal any sentence imposed below the applicable Sentencing Guidelines range or below the government's recommended sentence. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated.

The defendant also testified that she understood that if he is adjudged guilty of these charges, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel, and that she believed the representation had been effective. The defendant asked the court to accept her plea of guilty to Count One.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived her right to have the government's Factual Summary read in open court, and she had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offense charged, is as follows:

If this matter were to go to trial, the United States of America would prove with admissible and relevant evidence, including the testimony of co-conspirators, the following:

At all times relevant to the pending Indictment, CHRISTINA DAWN CHEATHAM resided in Ohio with her boyfriend Co-Defendant JOSE GUITERREZ-RAMIREZ. Defendant CHEATHAM acted as a facilitator and go between for illegal document vendors located in other states, persons desiring to

---

[2] The defendant's waiver excludes any appeal or motion on the grounds of ineffective assistance of counsel or prosecutorial misconduct not known to her at the time of her guilty plea. (Plea Agreement, p. 6 ¶11.)

5

assume the identity of another, and co-conspirators employed by the Scarbourgh Boulevard Deputy Registrar office for the Ohio Bureau of Motor Vehicles (BMV).

GUITEREZ-RAMIREZ and CHEATHAM used their residence as a staging area for individuals seeking to obtain legitimate Ohio Identification cards in someone else's name. These would be impersonators had been referred to the Defendant by illegal document vendors who sold the impersonators, without lawful authority, means of identification, such as Puerto Rican birth certificates and matching Social Security Cards.

CHEATHAM transported some of the impersonators to the Scarborough Boulevard location, where she acted as an interpreter" due to the impostors limited English skills. At the BMV, illegally obtained means of identification from Puerto Rico were used as the source documents to initiate the process of applying for Ohio Identification Cards.

Once in possession of an Ohio Identity Card, it appeared that the holder of the card was someone who entered the United States legally, from the state issuing the identity card, and when the identity card was issued, authentic source documents had been presented to state issuing agency. Numerous impersonators used the Ohio Identity cards to obtain employment in the Harrisonburg, Virginia area.

In September of 2007, agents of the Department of Homeland Security's Immigration and Custom Enforcement in Harrisonburg, Virginia, within the Western District of Virginia, initiated undercover operations to identify a known illegal document vendor. On September 24, 2007, Defendant EDWIN MENDEZ sold a Puerto Rican birth certificate and Social Security card to a Confidential Informant (CI). The name on the Social Security Card matched the name on the birth certificate. MENDEZ charged $600 for the identity documents and informed the CI that he could make arrangements for the CI to be transported to Ohio to obtain an Ohio Identification Card from a BMV office. After the first purchase, MENDEZ sold multiple Puerto Rican identity documents to the CI, some belonging to children as young as two years old. It has been determined that LUIS M. ROSADO-

6

RODRIGUEZ provided a large number of the Puerto Rican identity documents to Defendant MENDEZ.

On October 3, 2007, the CI and other Virginia impostors began traveling in an extended cab pick-up truck from Harrisonburg, Virginia to Columbus, Ohio. The pick-up truck was driven by Defendant JAIRO GOMEZ. The truck passengers were taken to the residence of Defendants RAMIREZ-GUTIERREZ and CHEATHAM in preparation for attempt to obtain an Ohio Identity Card.

On October 4, 2007, the CI and the other Virginia truck passengers were transported by Defendant RAMIREZ-GUTIERREZ to the Ohio to the BMV office at 2516 Scarborough Boulevard in Columbus, Ohio. Once at the location, Defendants NEKIA MACK-FULLER and MICHELE ECKERMAN processed the Virginia pick up truck passengers' applications for Ohio Identity Cards using the truck passengers' Puerto Rican identity documents. The CI and the others who traveled with him secured authentic Ohio Identity Cards using the Puerto Rican identity documents.

During a two year period of time, it has been determined that GUTIERREZ-RAMIREZ, with the assistance of Defendant CHEATHAM, made two or three visits a week to the BMV. In an average week, twenty impersonators were transported to the BMV, each possessing illegally obtained identification documents. The magnitude of the conspiracy is evidence by the fact that several hundred applications for Ohio Identity Cards, using identity documents from Puerto Rico, were processed at the BMV. Not all the applications resulted in the issuance of an Ohio Identity Card, as at times an impostor purchased a Social Security number that had previously been used by some else.

On February 13, 2008, Defendant CHEATHAM was arrested, after being advised of her constitutional rights, voluntarily waived her rights and provided the following information: Based upon conversations she had with the individuals she assisted in obtaining Ohio Identification Cards, she knew none were from Puerto Rico and were likely illegal aliens; she joined the conspiracy in 2007; she transported individuals to the BMV office where she assisted the BMV employees by translating for the applicants; she estimated during the past year she personally made over $35,000 to $40,000;

7

Case 5:08-cr-00005-GEC-BWC   Document 124   Filed 08/07/08   Page 7 of 9   Pageid#: 337

GUITERIEZ-RAMERIZ was the point of contact and dealt with illegal document vendors from multiple states, including Virginia; she observed GUITERREZ-RAMERIZ emphasizing to their clients that they had to sign the BMV documents with process used at the BMV, with special emphasis on making certain that the illegal alien signed the Puerto Rican name and not their real; if the Puerto Rican documents were insufficient to obtain an Ohio Identity Card no fee was charged; she was aware that GUITERREZ-RAMERIZ provided financial gifts to the BMV employees; and she has never met anyone from Puerto Rico. Her statements have been corroborated from other sources.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of her plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for October 17, 2008 at 9:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten

days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

August 7, 2008
Date